UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NICKALENA JEFFCOAT | CIVIL ACTION NO. 6:20-cv-00557 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| LAMAR PROPERTIES LLC | BY CONSENT OF THE PARTIES |

**MEMORANDUM RULING**

The following motions are currently pending: defendant Lamar Properties LLC's motion for partial summary judgment (Rec. Doc. 34), defendant Lamar Properties LLC's motion for summary judgment (Rec. Doc. 62), and plaintiff Nickalena Jeffcoat's cross-motion for summary judgment (Rec. Doc. 65). Lamar's motion for partial summary judgment is opposed, and the briefing deadlines for the other two motions have not yet elapsed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, Lamar's motion for partial summary judgment is granted in part, deferred in part, and this matter is remanded to the 15TH Judicial District Court, Lafayette Parish, Louisiana.

**Background**

Plaintiff Nickalena Jeffcoat initiated this lawsuit in Louisiana state court. Her former husband, Shannon Dural, was later added as a plaintiff in the suit. Ms.

Jeffcoat filed an original petition[1] and two supplemental and amending petitions.[2] Mr. Dural filed his own amended complaint.[3] Collectively, the plaintiffs' complaints allege that, on April 23, 2016, Ms. Jeffcoat and Mr. Dural were married to each other, living together, and jointly purchased a home located at 925 Lillian Michel Drive in Breaux Bridge, Louisiana, from the defendant, Lamar Properties, LLC. They alleged that they purchased the home by means of a bond for deed contract, governed by La. R.S. 9:2941. They submitted a Louisiana Residential Agreement to Buy or Sell,[4] indicating that they were the purchasers and the defendant was the seller of the subject property, that the agreed upon purchase price was $155,000, that the owner would finance the purchase, and that an act of sale would be executed before April 23, 2017. The plaintiffs also submitted an addendum to the purchase agreement,[5] which was executed on April 25, 2016 and stated that the plaintiffs paid a $25,000 deposit ($2,000 of which was applied to closing costs and the remainder of which was applied against the purchase price), and that Lamar financed the remaining $132,000, charging interest at the rate of

---

[1] Rec. Doc. 1-1.

[2] Rec. Docs. 17 and 53.

[3] Rec. Doc. 27.

[4] Rec. Doc. 50-2.

[5] Rec. Doc. 50-3.

2.70%, amortized over a thirty-year period. The plaintiffs also submitted a Lease-Purchase Agreement,[6] executed on April 23, 2016, with a twelve-month term. The plaintiffs alleged that they were required to pay all property taxes on the property, to insure the property, and to pay for any repairs to the property. They submitted a Lease Purchase Application[7] showing that the sales price was $155,000, that $132,000 was financed, that the interest rate was 2.7%, and that the monthly note was $535.39. They alleged that, in connection with the transaction, they executed a Flood Determination Disclosure[8] and a residential property disclosure[9] that designated Ms. Jeffcoat and Mr. Dural and the buyers and designated Lamar as the seller. Ms. Jeffcoat alleged that a commission on the sale was paid to a real estate company.

Ms. Jeffcoat alleged that she and Mr. Dural separated in October 2017, that Mr. Dural moved out of the home, and that he did not make any payments on the property after that time. They were allegedly divorced in July 2019.

One year after the original contract was entered into, Lamar allegedly advised Ms. Jeffcoat that the original agreement had expired and that the $25,000 deposit

---

6 Rec. Doc. 50-4.

7 Rec. Doc. 50-5.

8 Rec. Doc. 50-6.

9 Rec. Doc. 50-6 at 6-10.

was nonrefundable. Ms. Jeffcoat was allegedly required to enter into a series of addendums to the bond for deed contract,[10] each of which had a six-month term, and each of which significantly increased the monthly payments and the interest rate being charged. Ms. Jeffcoat alleged that she had difficulty making the increased payments and that, in September 2018, Lamar began threatening her with eviction. She further alleged that Lamar filed ten eviction actions against her between September 2018 and February 2020. Each time, Ms. Jeffcoat was allegedly required to pay a $200 fixed fee and a fee of 5% of the monthly note to stave off eviction. In December 2019, Lamar allegedly demanded that Ms. Jeffcoat pay $850 in fees to the Simon Estates Homeowner's Association, dating back to 2016. On January 13, 2020, Lamar allegedly terminated the bond for deed contract.[11]

The plaintiffs seek a declaration that their contract with the defendant was a bond for deed, and they seek the recovery of damages under Louisiana's bond for deed statute. The plaintiffs contend that the defendant's actions were onerous, oppressive, and unconscionable, and violated the Louisiana Consumer Credit Law, La. R.S. 9:3561(36). Ms. Jeffcoat alleged that the defendants were unjustly enriched by obtaining the $25,000 deposit. She also asserted a claim under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., alleging that Lamar was a lender,

---

[10] Rec. Doc. 50-8.

[11] Rec. Doc. 50-9.

that she and Mr. Dural entered into a credit transaction with Lamar, and that Lamar violated TILA by failing to make disclosures required by that statute (particularly with regard to the alleged increases in the amount of the monthly payments and interest rates).

Lamar removed the action to federal court, alleging that there is federal question jurisdiction because the plaintiffs seek to recover under TILA. In support of its motion for partial summary judgment, however, Lamar argued that the plaintiffs do not have a valid TILA claim because any claim they might have had prescribed before this lawsuit was filed. Lamar also argued that the subject contract between the plaintiffs and the defendant was not a bond for deed but instead was a lease with an option to purchase.

## Law and Analysis

### A. The Standard for Resolving a Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law, and a genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[12]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[13] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[14] All facts and inferences are construed in the light most favorable to the nonmoving party.[15]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[16] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[17]

---

12 *Sossamon v. Lone Star State of Tex*., 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).

13 *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

14 *Washburn v. Harvey*, 504 F.3d at 508.

15 *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

16 *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

17 *Condrey v. Suntrust Bank of Ga*., 431 F.3d 191, 197 (5th Cir. 2005).

**B. TILA**

The plaintiffs entered into a contract with the defendant in April 2016. The plaintiffs alleged that TILA was violated when the defendant failed to disclose, at the time the contract was entered into, that the interest rate charged and the monthly payments owed would increase over time. Litigation commenced with the filing of the plaintiffs' first petition for damages in April 2020, four years after the transaction occurred. In support of its motion for partial summary judgment, the defendant argued that the plaintiffs' TILA claim should be dismissed because it is untimely. In their opposition briefs, the plaintiffs did not argue that their TILA claims were timely nor did they argue that there is a basis for equitably tolling the applicable statutes of limitation.

The purpose of TILA is to assure a meaningful disclosure of credit terms to consumers.[18] Therefore, TILA applies to consumer credit transactions.[19] More specifically, TILA applies to "consumer credit transactions," in which credit is offered or extended to a natural person and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.[20] "Concluding a credit transaction without giving the required disclosures

18 15 U.S.C. § 1601(a).

19 *Frey v. First Nat. Bank Southwest*, 602 Fed. App'x 164, 169 (5th Cir. 2015).

20 See the definitions set forth in 15 U.S.C. § 1602.

constitutes a TILA nondisclosure violation."[21] The plaintiffs argued, in their complaints, that their contract with the defendant was a consumer credit transaction, pointing out that the residential agreement to buy or sell, which was executed on April 23, 2016, indicates that the seller (i.e, the defendant in this lawsuit) would provide owner financing[22] and further pointing out that the addendum to the purchase agreement, which was executed two days later, on April 25, 2016, states that the defendant would provide owner financing from April 23, 2016 until April 23, 2017 or until the buyers obtained conventional financing within three years.[23] They further alleged that the defendant violated TILA by failing to disclose that the applicable interest rates and monthly payments would increase over time.

Under the plain language of TILA, a claim for damages must be brought within one year of the alleged violation,[24] while a claim for rescission of a contract regulated by TILA must be brought not later than three years after the alleged violation.[25] All four of the plaintiffs' complaints alleged that the defendant's failure to disclose that the monthly payments and interest rate would increase was a

---

21 *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986).

22 Rec. Doc. 50-2 at 2.

23 Rec. Doc. 50-3 at 1.

24 15 U.S.C. § 1640(e).

25 15 U.S.C. § 1635(f).

violation of TILA. In all four complaints, the plaintiffs contended that they were entitled to recover damages, costs, and fees as a remedy for the alleged TILA violations.[26] In three of the complaints, the prayers also indicated that the plaintiffs were seeking rescission of their contract with the defendant.[27] Therefore, the plaintiffs' TILA claims must be interpreted as falling under both the one-year and the three-year limitations periods.

A cause of action under TILA accrues on the date the financial transaction occurred.[28] In other words, a TILA claim accrues when a loan is consummated or at the closing of a loan transaction.[29] As noted above, the plaintiffs offered no evidence or argument suggesting that their TILA claims were timely nor did they argue that there is a basis for equitably tolling the applicable statutes of limitation. While it is unclear whether equitable tolling applies to the one-year prescriptive

---

[26] Rec. Docs. 1-1 at 5; Rec. Doc. 17 at 6; Rec. Doc. 27 at 5; Rec. Doc. 53 at 7.

[27] Rec. Doc. 1-1 at 5; Rec. Doc. 17 at 8; Rec. Doc. 53 at 8.

[28] *Moor v. Travelers Ins. Co*., 784 F.2d at 633 (explaining that a TILA violation occurs when the credit transaction is consummated and that the transaction is consummated when a contractual relationship is created); *Williams v. Capital One N.A.*, No. 3:12-1975, 2014 WL 198154, at *3 (W.D. La. Jan. 15, 2014).

[29] See, e.g., *Calhoun v. Stearns Lending, LLC*, No. 4:19-CV-00055-ALM-CAN, 2019 WL 1232862, at *3 (E.D. Tex. Feb. 1, 2019), report and recommendation adopted, 2019 WL 1226079 (E.D. Tex. Mar. 15, 2019); *Bessant v. Wells Fargo Bank, Nat'l Ass'n*, No. 4:13cv306, 2014 WL 2996276, at *7 (E.D. Tex. July 3, 2014); *Val-Com Acquisitions Trust v. CitiMortgage, Inc*., No. 3:10-CV-1118-D, 2011 WL 1540353, at *2 (N.D. Tex. Apr. 21, 2011).

period for TILA nondisclosure claims,[30] the three-year limitation applicable to rescission claims cannot be equitably tolled.[31] More important, the plaintiffs did not allege a basis for equitable tolling in their petitions nor did they argue in their briefing that the applicable statutes of limitations should be extended on any basis or for any reason. Consequently, there are no material facts in dispute. It is undisputed that this lawsuit was filed more than three years after the date of the transaction that is alleged by the plaintiffs to be a credit transaction subject to TILA. Accordingly, any TILA claim that the plaintiffs might have had prescribed before this lawsuit was filed and must be dismissed with prejudice.

## C. Subject-Matter Jurisdiction

This court's subject-matter jurisdiction is predicated on the TILA claim. There is no allegation that the parties are diverse in citizenship; indeed, the jurisdictional allegations set forth in the plaintiffs' petitions indicate that the parties are *not* diverse in citizenship. Thus, there is no basis for subject-matter jurisdiction other than the federal question presented by the plaintiffs' TILA claim. The

---

30 *Fantroy v. First Financial Bank, N.A.*, No. 3:12-CV-0082-N(BH), 2012 WL 6764551, at *5 (N.D. Tex. Dec. 10, 2012), report and recommendation adopted, 2013 WL 55669 (N.D. Tex. Jan. 4, 2013) ("The Fifth Circuit has not yet specifically ruled on the issue of whether equitable tolling applies to claims for statutory damages under § 1640(a)(2)(A) based on nondisclosure violations.").

31 *Lowery v. Capital One Mortg.*, 429 Fed. App'x 377, 378 (5th Cir. 2011) (citing *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 419 (1998)).

remaining claims are all state-law claims grounded in Louisiana law and cognizable by this court under its supplemental jurisdiction. In the Fifth Circuit, however, the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.[32] Although this rule is neither mandatory nor absolute,[33] the United States Supreme Court has repeatedly cautioned that federal courts should avoid making "needless decisions of state law."[34] Furthermore, when federal claims have been eliminated from the litigation, the district court has "a powerful reason to choose not to continue to exercise jurisdiction."[35] Accordingly, this Court will decline to exercise jurisdiction over the remaining state-law claims and will remand this case to state court.

**Conclusion**

For the foregoing reasons,

---

32 *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir. 2002); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

33 *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d at 602.

34 *Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

35 *Enochs v. Lampasas County*, 641 F.3d at 161 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

IT IS ORDERED that defendant's motion for partial summary judgment (Rec. Doc. 34) is GRANTED IN PART, and the plaintiffs' TILA claim is dismissed with prejudice because it is untimely.

IT IS FURTHER ORDERED that, in all other respects, this Court DEFERS ruling on the defendant's motion for partial summary judgment (Rec. Doc. 34).

IT IS FURTHER ORDERED that this Court declines to exercise subject-matter jurisdiction over the remaining state-law claims and this case is remanded to the 15th Judicial District Court, Lafayette Parish, Louisiana, where it began.

Signed at Lafayette, Louisiana, this 17th day of February 2021.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE